**1**

1        UNITED STATES DISTRICT COURT
     CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION
2     HONORABLE STANLEY BLUMENFELD, JR., U.S. DISTRICT JUDGE

3

UNITED STATES OF AMERICA,
4
                    Plaintiff,
5
   v.                           Case No.
6                               2:21-cr-00540-SB-1
PAUL O. PARADIS,
7
                    Defendant.
8  _____

9

10         REPORTER'S TRANSCRIPT OF PROCEEDINGS
                   CHANGE OF PLEA
11                JANUARY 28, 2022
                    8:54 a.m.
12            LOS ANGELES, CALIFORNIA

13
APPEARANCES:
14  FOR THE PLAINTIFF:        MS. MELISSA E. MILLS
                             MR. J. JAMARI BUXTON
15                           MS. SUSAN S. HAR
                             Assistant United States Attorneys
16                           312 North Spring St., Ste. 1300
                             Los Angeles, California 90012
17
FOR THE DEFENDANT:        MR. DAVID C. SCHEPER
18                           MR. JEFFREY L. STEINFELD
                             Winston & Strawn, L.L.P.
19                           333 South Grand Ave., 38th Floor
                             Los Angeles, California 90017
20

21

22  _____

23           JUDY K. MOORE, CRR, RMR
          FEDERAL OFFICIAL COURT REPORTER
24           350 WEST 1ST STREET, #4455
          LOS ANGELES, CALIFORNIA 90012
25                213.894.3539

2

1          (Proceedings commenced at 8:54 a.m.)

2          COURTROOM DEPUTY:  Calling Item 4, Case Number

3    21-cr-540, United States of America versus Paul O. Paradis.

4          Counsel, please state your appearances, starting

5    with the Government.

6          MS. MILLS:  Good morning, your Honor.  Melissa

7    Mills, Jamari Buxton, and Susan Har on behalf of the United

8    States.

9          MR. SCHEPER:  Good morning, your Honor.  David

10   Scheper and Jeffrey Steinfeld with defendant Paradis who's

11   present.

12         THE DEFENDANT:  Good morning, Judge.  Paul Paradis.

13         THE COURT:  Good morning.  And please be seated,

14   Counsel.

15         This matter is here for a change of plea, and I do

16   appreciate that all counsel were able to advance this until

17   today, which is a more convenient day for the Court.  Let me

18   make sure that I know the pronunciation of the defendant's

19   name.  Let me have you pronounce your last name once again

20   slowly for the Court, please.

21         THE DEFENDANT:  Paradis.

22         THE COURT:  Paradis?

23         THE DEFENDANT:  Yes, sir.

24         THE COURT:  Thank you.  I think I have it.  So my

25   understanding is, Mr. Paradis, that you do wish to change your

1  plea in this matter from -- I think you entered a plea

2  previously of not guilty, and you now have reached a deal with

3  the Government and intend to change your plea to guilty; is

4  that correct?

5          THE DEFENDANT:  That is correct, Judge.

6          THE COURT:  So the first thing we're going to do is

7  I'm going to have you sworn in.  And you can remain standing

8  and you'll be sworn in.  Afterwards, you should feel free to be

9  seated and just make sure that your microphone is pulled

10 towards you and then that you're speaking into the microphone,

11 please.  And all counsel can remain seated, following that

12 approach as well.  So let me go ahead and have you sworn in

13 first, please.

14                    PAUL O. PARADIS,

15 the defendant, being first duly sworn by the courtroom deputy,

16 testified as follows:

17          THE COURT:  And you can remain seated, or be seated,

18 I should say, please.  And, Mr. Paradis, tell me, is your true

19 date of birth March 9, 1960?  Is that correct?

20          THE DEFENDANT:  No, your Honor.  It's April 6, 1963.

21          THE COURT:  Thank you, sir.  And you can remain

22 seated when I'm speaking to you.  You need not rise and then be

23 seated.

24          THE DEFENDANT:  Not familiar to me.  I usually

25 stand, so I apologize.

4

1          THE COURT:  I understand.  So first of all, you

2    should understand, Mr. Paradis, that you have just taken an

3    oath to tell the truth, and that means that if, in fact, you

4    provide knowingly misleading information or false information

5    as I am questioning you, you can be subject to prosecution for

6    another crime called perjury.  You do understand that?

7          THE DEFENDANT:  Yes, Judge.

8          THE COURT:  And let me actually ask Government

9    counsel, to the extent necessary, the Victim Rights Act has

10   been complied with?

11         MS. MILLS:  Yes, your Honor.

12         THE COURT:  All right.  Thank you.  And also,

13   Counsel, I have reviewed the plea agreement -- and I'm

14   referring to Ms. Mills -- and I want to make sure that I

15   reviewed and have the correct plea agreement.  It was filed on

16   November 29th of 2021?

17         MS. MILLS:  That's correct, your Honor.

18         THE COURT:  And this plea agreement contains all of

19   the promises that were made to Mr. Paradis; is that correct?

20         MS. MILLS:  It is, your Honor.

21         THE COURT:  Are there any other promises that the

22   Government has made to Mr. Paradis other than those that are

23   contained in the plea agreement?

24         MS. MILLS:  There are not.

25         THE COURT:  And is that correct, Mr. Paradis, has

1  the Government made any promises to you other than those in the

2  plea agreement?  I phrased that kind of awkwardly, so let me

3  restate it.  Has the Government made any promises to you other

4  than those that are stated in this plea agreement?

5          THE DEFENDANT:  No, sir.

6          THE COURT:  And you, in fact, signed this agreement

7  with a full understanding of its terms; is that correct?

8          THE DEFENDANT:  Yes, I did, your Honor.

9          THE COURT:  I'm going to return to you in a moment,

10  but let me just check with Mr. Scheper as well as to whether

11  the Government has made any promises to you to communicate to

12  your client other than the terms of the plea agreement that is

13  set forth in this November 29, 2021, document?

14          MR. SCHEPER:  No other promises, your Honor.

15          THE COURT:  All right.  And, Mr. Scheper, have you

16  and other counsel representing your client had a complete and

17  full opportunity to investigative this case, including the

18  facts and the applicable law?

19          MR. SCHEPER:  As phrased, your Honor -- and I want

20  to be as direct as I can -- we shut down investigation three

21  years ago, commencing with the day we met Ms. Mills and her

22  team for the first time, and we made a promise that we were

23  going to be an open book and we were going to cooperate to the

24  hilt.  So we have not done, post March of 2019, any

25  investigation of our own other than in collaboration with the

**6**

1  Government and cooperating and answering all questions that the

2  Government has put to us and producing documents to the

3  Government.

4        THE COURT:  All right.  Is there any investigation

5  that you think remains to be done on behalf of your client,

6  whether it's factually or legally, that would be necessary for

7  you to provide fully informed and good advice to your client as

8  to how he should proceed in this case?

9        MR. SCHEPER:  Yes, your Honor, there is --

10 cooperation is continuing and ongoing, and I think that that

11 cooperation will be highly relevant to the ultimate decision

12 that's going to be before the Court at sentencing.

13       THE COURT:  So perhaps you can explain to the Court

14 why I should proceed here this morning, that is, if I'm hearing

15 that perhaps there's further investigation that you believe

16 necessary for you to best represent your client, unless I'm

17 misunderstanding, then it seems to me that this proceeding is

18 premature.

19       MR. SCHEPER:  I don't want to speak unilaterally,

20 your Honor.  I'm a rules follower, and the date was set.  I

21 think I state accurately with the Government that the ongoing

22 cooperation doesn't necessarily prevent the entry of the plea

23 because he's going to plead guilty; it is going to be pursuant

24 to a cooperation agreement.  It's just that it's not accurate

25 to say that the cooperation component concludes on January 28

1 of 2022.  And all I'm trying to suggest to the Court is the

2 additional work Mr. Paradis does, you know, we think is going

3 to be helpful for him in mitigation of his wrongdoing at

4 sentencing.

5         THE COURT:  Is there any reason why you and your

6 client are not in a position to proceed today with entering

7 into this plea agreement?

8         MR. SCHEPER:  As stated, your Honor, no.  We're not

9 going to change our mind on what the plea to the case is.

10         MS. MILLS:  Your Honor, may I have a moment with

11 Mr. Scheper, please?

12         THE COURT:  Yes, please.  Yes.  This will be off the

13 record.

14         (Off the record.)

15         THE COURT:  Mr. Scheper, what I'm trying to drive at

16 here, perhaps more subtly than I thought, is whether you're

17 providing competent representation to your client.  And when I

18 hear that a lawyer perhaps hasn't fully investigated the facts

19 and the law sufficient to make that judgment, then I am not

20 going to proceed in taking a plea.

21         MR. SCHEPER:  Oh, okay.  Not surprisingly, knowing

22 my track record, subtlety possibly lost on me, but I'll take

23 another crack at taking the Court's question head-on.

24         There is nothing more we need that's in the

25 possession of the Government to make a fully informed decision

1  on whether or not to plead guilty.  And that -- yeah, so our

2  investigation, the investigation necessary for us to enter a

3  knowing, voluntary plea invulnerable to collateral attack has

4  been done.

5          THE COURT:  And so am I correct, then, what

6  you're -- what you were trying to communicate to the Court is

7  that there is more work to be done with respect to obtaining

8  information that you intend to present to the Government in

9  order to essentially mitigate whatever the sentence would be?

10          MR. SCHEPER:  Well said, your Honor, yes.

11          THE COURT:  All right.  But I'm going to go, then,

12  through with you your certification.  And you did, in fact,

13  sign the certification on or about November 19th of last year;

14  is that correct?

15          MR. SCHEPER:  I think it might have been the 29th,

16  but if it was the -- I don't have it right in front of me, but

17  whatever the date was, I certainly went over it.

18          THE COURT:  All right.  And I have the document, and

19  it appears to be dated November 19th, but whether it was the

20  19th or the 29th, you've indicated that you carefully and

21  thoroughly discussed every part of the agreement with Mr.

22  Paradis; is that true?

23          MR. SCHEPER:  It is true.

24          THE COURT:  And you fully advised him of his rights

25  of possible pre-trial motions that might be filed, of possible

1   defenses that might be asserted either prior to or at trial, of

2   the sentencing factors as well as the sentencing guidelines,

3   the consequences of entering into the agreement?  All of that

4   is fully accurate?

5          MR. SCHEPER:  Yes, your Honor.

6          THE COURT:  And you further say that you're unaware

7   of any promises, inducements, or representations that were made

8   to Mr. Paradis other than those that are contained in this plea

9   agreement.  To your knowledge, no one has threatened or forced

10  him to enter into this agreement and that his decision as far

11  as you could discern from your contact and communication with

12  him is knowing, intelligent, voluntary, and free.  Is that also

13  all true?

14         MR. SCHEPER:  Yes, sir.

15         THE COURT:  And let me turn to you, Mr. Paradis.  I

16  know that you obviously have substantial legal training,

17  although I don't know that it's in criminal law.  Am I correct

18  on that?

19         THE DEFENDANT:  That is correct, Judge, I've never

20  done any criminal law.

21         THE COURT:  But are you satisfied that your counsel,

22  in fact, have been on top of things, essentially, and fully

23  investigated to your satisfaction as best they can the facts

24  and the law in this case to get you to the point where you're

25  fully comfortable with entering into this plea agreement at

1  this point?

2          THE DEFENDANT:  Yes, your Honor.  Not only am I

3  satisfied, just for the record, I ran out of money a long time

4  ago and am in bankruptcy, and these two gentlemen have been

5  continuing to represent me on their own dime.  They've stayed

6  with me at every meeting, have been with me around the clock.

7  So I am very thankful, and yes, I'm very comfortable with him.

8          THE COURT:  And is there anything further that you

9  are aware of that you think would be -- that should be done on

10 your behalf before you're in a position to enter into this plea

11 agreement with the Government?

12         THE DEFENDANT:  Not with respect to the plea

13 agreement.  With respect to the sentencing, yes, there's more

14 work that I need to do which we've already discussed with the

15 Government.

16         THE COURT:  Understood.  But whatever work that

17 remains to be done will not affect your understanding and

18 desire to enter into this agreement this morning; is that true?

19         THE DEFENDANT:  That is true, Judge.

20         THE COURT:  And am I correct, Mr. Paradis, that

21 according to your certification on this plea agreement that you

22 have fully reviewed the plea agreement word by word, you're

23 thoroughly familiar with it?

24         THE DEFENDANT:  Unfortunately, yes.

25         THE COURT:  And you have had enough time to consider

1  everything contained in the plea agreement and to discuss all

2  of that and have questions you might have answered by your

3  counsel?

4          THE DEFENDANT:  Yes.  And I've done that.

5          THE COURT:  All right.  And also, you've had enough

6  time to speak with Mr. Scheper and his team with regard to the

7  evidence in the case, the rights that you have to challenge

8  this case, and any potential defenses that you might have to

9  this case?

10          THE DEFENDANT:  Yes, Judge.

11          THE COURT:  You also have discussed the sentencing

12  guidelines as well as statutory factors that the Court would

13  consider in deciding the appropriate sentence along with

14  position papers that I would receive and a pre-sentence report?

15  You also had time to discuss that as well?

16          THE DEFENDANT:  Yes, I have.

17          THE COURT:  And I know you just said this, but just

18  to confirm, what I'm hearing is that you are fully and

19  thoroughly satisfied with the quality of representation that

20  you have received; is that correct?

21          THE DEFENDANT:  Yes, Judge, that's accurate.

22          THE COURT:  And no one has threatened you or applied

23  any pressure on you to enter into this deal other than your

24  review of the terms and in making a decision as to whether the

25  terms of the agreement are in your best interest?  Is that all

1  true?

2          THE DEFENDANT:  That is correct, it's been my

3  decision.

4          THE COURT:  And so basically, as I understand what

5  you did, is you sort of weighed the pros and cons of either

6  entering into this agreement and giving up your right to fight

7  this case further through a trial versus entering into this

8  agreement and getting the benefits of it, and you've weighed

9  the pros and cons of either going to trial or entering into

10  this agreement and you've concluded it's in your best interest

11  to enter into this agreement?

12          THE DEFENDANT:  Yes, Judge.  And to be more

13  specific, I did that back in March of 2019 when I voluntarily

14  met with the FBI and the U.S. Attorney's Office and agreed to

15  cooperate and did so in a covert fashion for about 24 months

16  and have continued to do so.  So the answer is yes.

17          THE COURT:  And you also have the right, as you

18  know, to have a grand jury proceeding where a grand jury would

19  make a determination if there's sufficient evidence, probable

20  cause, to return an indictment against you, and you have and do

21  willingly give up that right; is that correct?

22          THE DEFENDANT:  Yes, I have, Judge.

23          THE COURT:  And you are charged in Count 1 in the

24  information with Federal program bribery, in violation of 18

25  USC Section 666(a)(1)(B), which is a felony.  You are familiar

1  with that charge, as well as the elements of that charge; is

2  that correct?

3          THE DEFENDANT:  Yes, your Honor.

4          THE COURT:  And am I correct that you're also

5  waiving your right to have the Court read to you the

6  information because you are thoroughly familiar with it?

7          THE DEFENDANT:  Yes, that's correct.

8          THE COURT:  Incidentally, if at any point you do

9  need to stop and speak with your counsel confidentially, you

10  should just let me know, and your counsel can as well, and

11  we'll pause.  You understand that?

12          THE DEFENDANT:  Thank you, Judge.

13          THE COURT:  All right.  So as you know, having

14  thoroughly reviewed the plea agreement, the Government, in

15  order to obtain a conviction against you on the charge of

16  Federal program bribery, would have to prove beyond a

17  reasonable doubt the following elements:  That you were an

18  agent of the Los Angeles City Attorney's Office and the City of

19  Los Angeles; that you corruptly solicited or demanded for the

20  benefit of any person or accepted or agreed to accept anything

21  of value from any person.  They would also have to prove that

22  you intended to be influenced or rewarded in connection with

23  any business, transaction, or series of transactions of the Los

24  Angeles City Attorney's Office and the City of Los Angeles

25  involving anything of value of $5,000 or more.  And, last, they

would have to prove beyond a reasonable doubt that the L.A.
City Attorney's Office was an agency of the City of Los Angeles
which received, during the years 2015 to 2017, annual benefits
in excess of $10,000 under a Federal program involving a grant,
contract, subsidy, loan, guarantee, insurance, or any other
form of Federal assistance.  You do understand that's what the
Government would have to prove beyond a reasonable doubt in
order to obtain a conviction against you on Count 1 of the
information?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  And you have provided a very extensive
factual basis in this case, and I did have a chance, of course,
to read the entire plea agreement, including that factual
basis.  The factual basis is contained in an exhibit which, if
I recall correctly, is approximately 27 pages, and it appears
to the Court that you have not only read through the factual
basis, but other than the first page, you have affixed your
initials to each of the pages of that attachment.  Is that all
true?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  And does that reflect the fact that you
read through the entire factual basis contained in Attachment A
word-for-word and when you put your initials down, you were
trying to convey to the Court that, in fact, you did that, you
understood it, and there isn't a word in the attachment that

1  has escaped your notice?  Is that a fair conclusion on my part?

2  THE DEFENDANT:  Yes, it is, Judge.

3  THE COURT:  And would it be beneficial for you if I

4  had the Government read to you this attachment, that is, the

5  factual basis, or would that not be necessary because, in fact,

6  you currently are fully familiar with everything stated

7  therein?

8  THE DEFENDANT:  Unfortunately, I'm fully familiar

9  with it, so there's no need for that.

10  THE COURT:  All right.

11  THE DEFENDANT:  Unless you want to.  It's up to you.

12  THE COURT:  No.  The only reason I would do so, Mr.

13  Paradis, is if it would be beneficial to you.  If it's clear to

14  the Court that it would essentially be a waste of time because

15  all I would do is ask you at the end of that, after reading it,

16  are all of these facts correct and you were to tell me yes and

17  you can tell me that now because you're familiar with it,

18  there's no need for me to read it.

19  THE DEFENDANT:  Okay.

20  THE COURT:  Do you understand where I'm coming from?

21  THE DEFENDANT:  Yes, Judge.

22  THE COURT:  And so you fully understand what's

23  contained in that factual basis, and you agree that everything

24  stated therein is true and accurate?

25  THE DEFENDANT:  Yes, Judge.  Yes, I do, Judge.

1           THE COURT:  Is there any objection that you have to

2   anything stated in the factual basis?

3           THE DEFENDANT:  Not in the factual basis, no.

4           THE COURT:  All right.  Is there any other objection

5   that you have with respect to anything that's contained in the

6   plea agreement?

7           THE DEFENDANT:  Not in the plea agreement.

8           THE COURT:  All right.  Is there something you wish

9   to tell the Court?  Because it sounds like you're limiting the

10  scope of your response, or maybe I'm being too sensitive to

11  your response.

12          THE DEFENDANT:  The information differs from the

13  plea agreement.  I agreed to the plea agreement and the factual

14  basis in the plea agreement.

15          THE COURT:  All right.  So -- but you do understand

16  and have agreed with regard to the charge in the information,

17  you're satisfied that the Government can prove beyond a

18  reasonable doubt that charge, Count 1, based upon the factual

19  basis that you're agreeing to, correct?

20          THE DEFENDANT:  That is correct.

21          THE COURT:  So if I'm hearing you correctly, perhaps

22  there's something in the information that is factually stated

23  that you disagree with, but ultimately it's irrelevant because

24  the factual basis in the plea agreement is indeed accurate, and

25  that is sufficient to warrant a conviction beyond a reasonable

1  doubt?

2          THE DEFENDANT:  You just stated that perfectly.

3          THE COURT:  All right.  And you do understand the

4  maximum sentence that you're facing is ten years in custody,

5  followed by three years of supervised release?

6          THE DEFENDANT:  Yes, unfortunately, I do.

7          THE COURT:  You also understand that the maximum

8  fine that you're facing is $250,000 or twice the amount of gain

9  or loss, whichever is greater?

10          THE DEFENDANT:  Yes, Judge.

11          THE COURT:  And there's also a $100 mandatory

12  special assessment.  You understand that as well?

13          THE DEFENDANT:  Yes, sir.

14          THE COURT:  And just real briefly, because we've

15  touched upon this, you understand the Court is going to

16  consult, although it's not bound by the sentencing guidelines,

17  and I will also take into account and make sure that I am

18  staying within the legal bounds of the statutory factors that

19  the Court considers, which I understand you have gone through

20  with Mr. Scheper.  Are you with me and understand so far?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  You're also going to be required to

23  submit to an interview with the probation department who will

24  then prepare a pre-sentence report.  I will take that into

25  account as well.  You'll have a chance to discuss that with

1    your counsel; if there are inaccuracies, to make objections and

2    bring that to the Court's attention before I make any kind of

3    determination.  You understand that?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  Also, you'll have an opportunity to

6    provide the Court with a position paper, a sentencing

7    memorandum, as will the Government.  I will take all of that

8    into account and ultimately make a determination of a lawful

9    sentence that I think is appropriate based upon the facts and

10    the law that is before me.  You understand that?

11          THE DEFENDANT:  Yes, I do.

12          THE COURT:  It's also important for you to

13    understand, Mr. Paradis, that while your counsel can give you

14    some sense as to what they think if they were in my shoes they

15    might do or what would be appropriate, there's no one who can

16    tell you what I'm going to do, and you can't rely upon anything

17    anyone tells you as to what I'm going to do.  All you can rely

18    upon is that I'm going to make a determination that is an

19    informed one and that is a lawful one.  Do you understand that?

20          THE DEFENDANT:  Yes, I do, Judge.

21          THE COURT:  So if -- and I'm not suggesting this is

22    necessarily going to happen, but if let's say you're

23    disappointed with the Court's sentence and you think the

24    Court's sentence is too harsh -- again, I'm not suggesting that

25    necessarily will be the case.  I haven't -- the information

1  before me, I'm not in a position to even have an informed view

2  as to what the appropriate sentence would be, but the point is,

3  is that even if you ultimately are disappointed, you can't walk

4  away from this agreement; you're going to be bound by it.  You

5  understand that?

6          THE DEFENDANT:  Yes, I do, Judge.

7          THE COURT:  Also, you do understand, as I have

8  explained, you have the right to fight this case to trial, you

9  have the right to maintain your innocence and to stand on your

10  plea of not guilty.  You also have the right to have counsel

11  throughout these proceedings.  And I heard what you said about

12  your situation and also what private counsel are doing on your

13  behalf, but please understand that your right to be represented

14  by counsel, as you know, applies irrespective of your ability

15  to pay.  So if, in fact, you don't have the ability to pay and

16  you wish to have counsel appointed for you, I will certainly

17  appoint counsel for you free of cost.  Do you understand that?

18          THE DEFENDANT:  Yes, I do, and I appreciate that.

19  Thank you.

20          THE COURT:  And you can do so even now.  So if, for

21  example, you were thinking, you know what?  I'm going to just

22  try to end this thing because I'm out of money and, you know,

23  I'm not going to have counsel present so let me just go ahead

24  and enter into this plea agreement, you shouldn't have that

25  thought because the Court will appoint counsel for you.  Do you

1   understand that?

2          THE DEFENDANT:  Yes, I do.  And the reason I want to

3   end it is I'm trying to take responsibility for what I did

4   wrong and own it and move forward in life.  I'm shamed, I'm

5   very ashamed of what I did, but it's important, as my

6   grandfather taught me a long time ago, when you screw up, own

7   it, move forward, and, you know, do the best you can.  That's

8   what I'm trying to do.

9          THE COURT:  And you do understand you have the right

10  to a jury trial, which is a trial by 12 members of the

11  community who would be selected with your and your counsel's

12  participation from a fair cross-section of the community, and

13  those 12 individuals would unanimously have to agree that

14  you're guilty beyond a reasonable doubt in order for the

15  Government to obtain a conviction, and that would apply to each

16  of the elements of the charge.  Do you understand that?

17          THE DEFENDANT:  Yes, your Honor.

18          THE COURT:  Also, at trial, you'd have the right to

19  confront evidence presented against you, including

20  cross-examining witnesses.  You'd have the right if you chose

21  to present a defense but no obligation to do so.  So you could

22  remain silent.  You could not call witnesses and just put the

23  Government to their burden.

24          On the other hand, if you elected to present a

25  defense, you'd have that right as well.  That includes using

the subpoena power of the Court at no charge to yourself to

present evidence, as well as to testify if you desired to do

so.  Do you understand all of that?

THE DEFENDANT:  Yes, Judge.

THE COURT:  Now, on the other hand, if you decided

you wished to waive your right to have a jury trial, again,

this is something that you could do, you'd have an individual

judge, myself, make the determination as to guilt or not guilt.

Do you understand that?

THE DEFENDANT:  Yes, Judge.

THE COURT:  Do you have any questions about anything

that has been explained to you thus far?

THE DEFENDANT:  No.  And I thank you for being very

thorough.

THE COURT:  And with that, you do waive your rights

to and at a speedy and public trial, be it a jury trial or

Court trial?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  And you do understand, Mr. Paradis, that

there are a number of other consequences in addition to giving

up your right to a trial that will flow from your entering into

this agreement?  If you're not a U.S. citizen, you will be

removed, deported, denied admission or readmission into the

United States, and denied U.S. citizenship.  I don't think it's

an issue, but I have to advise everyone of that.  You

1    understand that?

2            THE DEFENDANT:  Yes, I do.  It's not an issue.

3    Thank you.

4            THE COURT:  Also, if you're currently on parole or

5    probation or any type of post-conviction supervision, by

6    entering into this agreement, you'll violate the terms and

7    conditions thereof.  Do you understand that?

8            THE DEFENDANT:  Yes, and that's not an issue either.

9            THE COURT:  Now, you will lose your right to vote,

10   serve as a juror, hold public office, and also you'll lose your

11   right to own, use, possess, have custody or control knowingly

12   of firearms, ammunition, or ammunition loading devices.  Do you

13   understand that?

14           THE DEFENDANT:  Yes, Judge.

15           THE COURT:  And you'll want to particularly pay

16   careful attention to the firearm prohibition because what that

17   means is if you're cohabitating with someone and they have

18   firearms and you potentially have custody -- or control, I

19   should say -- over it, that could be a problem for you that

20   would cause a potential future and separate conviction or

21   prosecution.  Do you understand that?

22           THE DEFENDANT:  Yes, your Honor.

23           THE COURT:  Now, you have carefully reviewed the

24   appellate waiver that you have agreed to.  Am I correct on

25   that?

1              THE DEFENDANT:  Yes, sir.

2              THE COURT:  In an abundance of caution, Mr. Paradis,

3    I am going to read that to you to make sure that we're all on

4    the same page, so to speak.  So on Page 10 -- and I'm just

5    going to read it to you, so you need not get the document out

6    unless you wish to.  It says that you understand that with the

7    exception of an appeal, based on a claim that your guilty plea

8    was involuntary, by pleading guilty, you're waiving and giving

9    up any right to appeal your conviction on the offense to which

10   you are pleading guilty.  You understand that this waiver

11   includes, but it's not limited to, arguments that the statute

12   to which you are pleading guilty is unconstitutional and any

13   and all claims that the statement of facts provided herein is

14   insufficient to support your plea of guilty.  You further agree

15   that provided that the Court imposes a total term of

16   imprisonment on the count or conviction of no more than the

17   statutory maximum of ten years, you're giving up the right to

18   appeal all of the following:  A, the procedures and

19   calculations used to determine and impose any portion of the

20   sentence; B, the term of imprisonment imposed by the Court; C,

21   the fine imposed by the Court, provided it is within the

22   statutory maximum; D, to the extent permitted by law.  The

23   constitutionality or legality of your sentence, provided it is

24   within the statutory maximum; E, the term of probation or

25   supervised release imposed by the Court, provided it is within

1  the statutory maximum; and F, any of the following conditions

2  of probation or supervised release imposed by the Court,

3  namely, the conditions set forth in the Second Amended General

4  Order 20-04 of this Court, as well as the drug testing

5  conditions mandated by 18 USC Sections 3563(a)(5) and 3583(d),

6  and the alcohol and drug use conditions authorized by 18 USC

7  Section 3563(b)(7).

8          The United States Attorney's Office agrees that

9  provided all portions of the sentence are at or below the

10 statutory maximum specified above, the U.S. Attorney's Office

11 gives up its right to appeal any portion of the sentence.  You

12 also give up any right to bring a post-conviction collateral

13 attack on the conviction or sentence except a post-conviction

14 collateral attack based on a claim of ineffective assistance of

15 counsel, a claim of newly discovered evidence, or an explicitly

16 retroactive change in the applicable sentencing guidelines,

17 sentencing statutes, or statutes of conviction.

18         You understand that this waiver includes, but it is

19 not limited to, arguments that the statute to which you are

20 pleading guilty is unconstitutional and any and all claims that

21 the statement of facts provided herein is insufficient to

22 support your plea of guilty?  You do understand all that I have

23 just now read to you?

24         THE DEFENDANT:  Yes, I do, Judge.

25         THE COURT:  And with that understanding, you waive

1   your rights to an appeal, as well as to a collateral attack as

2   I have just now described it?

3            THE DEFENDANT:  Yes, I do.  That's correct.

4            THE COURT:  Now, have you understood, Mr. Paradis,

5   everything that has happened here this morning?

6            THE DEFENDANT:  Yes, I have.

7            THE COURT:  And you've also understood the colloquy,

8   the back and forth, that you and I have had?

9            THE DEFENDANT:  Yes, Judge.

10           THE COURT:  You understand the consequences of

11  pleading guilty?

12           THE DEFENDANT:  Very much.

13           THE COURT:  And is there any reason why the Court

14  should not accept your change of plea here this morning?  Let

15  me just give you, just by way of example, that you're not able

16  really to make an appropriate decision here this morning

17  because your head is foggy, you're tired, you're sick, you're

18  under the influence of something.  Anything at all that is

19  affecting your ability to give me your best judgment here this

20  morning?

21           THE DEFENDANT:  No, your Honor.

22           THE COURT:  Any other reason why we shouldn't

23  proceed forward with the Court's taking your change of plea?

24           THE DEFENDANT:  No, your Honor.

25           THE COURT:  Before I take the plea, let me hear from

1  the Government, whether there's anything that the Government

2  believes that I should review.

3          MS. MILLS:  No, your Honor.  The Government is

4  satisfied.  Thank you.

5          THE COURT:  And, Mr. Scheper, anything for the

6  defense?

7          MR. SCHEPER:  Nothing further, your Honor.

8          THE COURT:  All right.  And one last thing, Mr.

9  Paradis.  We talked about supervised release, and it's

10 explained in the plea agreement.  It's post-conviction

11 supervision.  You understand what that is, correct?

12         THE DEFENDANT:  Generally, yes.

13         THE COURT:  All right.  Basically, what it is, just

14 to give you a thumbnail sketch, is that assuming I put you on

15 supervised release, I'll put you on supervised release for a

16 certain period of time.  Most people equate this with basically

17 either a probation or parole conditions where you have certain

18 conditions of supervised release.  So there would be conditions

19 about obeying all laws, and there could be specific conditions

20 as well concerning how you conduct yourself while you are out

21 of custody.  And you'll have to report to probation

22 periodically and comply with all of the conditions of

23 supervised release for the period imposed.

24         If you violate the terms and conditions of your

25 supervised release, you can be found to be in violation,

1 causing you to either go into custody or to return to custody

2 or be sanctioned in some other fashion.  Do you understand

3 essentially what supervised release is?

4        THE DEFENDANT:  Yes, Judge.  Thank you for

5 explaining.

6        THE COURT:  All right.  And so you are charged in

7 Count 1 of the information with Federal program bribery, in

8 violation of 18 USC Section 666(a)(1)(B), which is a felony.

9 How do you plead to the charge?

10        THE DEFENDANT:  I plead guilty, your Honor.

11        THE COURT:  And are you pleading guilty because, in

12 fact, you did commit the charged acts as fully or more fully

13 set forth in the factual basis that we discussed?

14        THE DEFENDANT:  Yes, I did.

15        THE COURT:  And, Counsel, do you join in the

16 waivers, concur in the plea, and stipulate that there is,

17 indeed, a factual basis based upon the factual basis stated in

18 the plea agreement?

19        MR. SCHEPER:  Mr. Steinfeld and Mr. Scheper agree

20 and waive.

21        THE COURT:  All right.  The Court makes the

22 following findings:  The Court finds the plea and waivers to

23 have been made knowingly, intelligently, voluntarily, and

24 freely.  The Court makes that determination based upon the

25 Court's colloquy with Mr. Paradis.  I'm fully convinced that it

1   is a knowing, intelligent, and voluntary plea.  It's free of

2   any coercion or undue influences or promises other than those

3   made in the plea agreement.  I therefore am finding him guilty

4   and am incorporating the plea agreement into the record.

5            I'm going to set this matter for probation and

6   sentencing, and let me suggest a date and see if it's agreeable

7   to all counsel.  How is May 3rd of this year at 8:00 for the

8   Government?

9            MS. MILLS:  Your Honor, the Government requires some

10  additional time with Mr. Paradis because his cooperation is

11  continuing in this investigation.  I believe that a date in

12  July should give us sufficient time.  And then with the Court's

13  indulgence, if we require additional time, we would ask for a

14  continuance, but I believe July should be sufficient.

15           THE COURT:  Let me hear, Mr. Scheper, whether you

16  agree with that.

17           MR. SCHEPER:  I join in that, your Honor, and I add

18  an additional piece of sociology.  Mr. Paradis' son is getting

19  married on June 25th, and so a couple of weeks beyond that

20  would be just great.  I think we can get everything done we

21  need to get done, and he can enjoy his son's nuptials.

22           THE COURT:  All right.  And so I will set the

23  matter, then, for -- let's make it July 19th at 8:00 a.m.  Is

24  that agreeable to everyone?

25           MS. MILLS:  It is fine for the Government, your

1  Honor.  Thank you.

2          MR. SCHEPER:  And fine for the defense.  And thank

3  you, your Honor.

4          THE COURT:  All right.  And I will order a

5  pre-sentence report sufficiently in advance of that date.  And

6  all counsel are to provide the Court with any sentencing

7  memoranda at least 14 days before the sentencing hearing.

8          And, Mr. Paradis, don't read anything into what I'm

9  about to tell you.  I just advise all defendants who have a

10  sentencing who are out on bond of the following:  That you

11  should be prepared to go into custody if the Court determines

12  that a custodial sentence is appropriate.  So you'll be out on

13  bond for quite sometime.  You should make sure that you are

14  taking care of your affairs because it's not likely that I'm

15  going to allow you to stay out on bond after sentencing if, in

16  fact, I sentence you to custody time.  Do you understand that?

17          THE DEFENDANT:  Yes, your Honor.

18          THE COURT:  All right.  Is there anything further,

19  Mr. Scheper, that we can do on behalf of your client here this

20  morning?

21          MR. SCHEPER:  No, your Honor.

22          THE COURT:  Ms. Mills, anything further on behalf of

23  the Government?

24          MS. MILLS:  No, your Honor.  Thank you.

25          THE COURT:  Very well.  Then this matter is

1  concluded, and Mr. Paradis will be ordered back here on the

2  date indicated at 8:00.  And he is to obey all laws and other

3  conditions of the bond.  Thank you.

4           THE DEFENDANT:  Thank you, Judge.

5           THE COURT:  Thank you very much.  We're going to try

6  to call the next matter, so you're all free to leave.  And have

7  a good weekend.

8           (Proceedings concluded at 9:31 a.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**31**

1                          CERTIFICATE OF OFFICIAL REPORTER

2

3    COUNTY OF LOS ANGELES     )
                               )
4    STATE OF CALIFORNIA       )

5

6              I, JUDY K. MOORE, FEDERAL OFFICIAL REALTIME COURT

7    REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR THE

8    CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT

9    TO SECTION 753, TITLE 28, UNITED STATES CODE THAT THE FOREGOING

10   IS A TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY

11   REPORTED PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT

12   THE TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE

13   REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

14

15

16

17                    DATED THIS 16TH DAY OF FEBRUARY, 2022.

18

19                         /s/Judy K. Moore
20              _____
21                     JUDY K. MOORE, CRR, RMR
                    FEDERAL OFFICIAL COURT REPORTER

22

23

24

25