DAVID C. SCHEPER (SBN: 120174)
dscheper@winston.com
JEFFREY L. STEINFELD (SBN: 294848)
jlsteinfeld@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543
Telephone: (213) 615-1700
Facsimile:   (213) 615-1750

Attorneys for Defendant
PAUL O. PARADIS

# UNITED STATES DISTRICT COURT

# CALIFORNIA CENTRAL DISTRICT

| UNITED STATES OF AMERICA, | **Case No. 2:21-cr-00540-SB** |
|---|---|
| Plaintiff, | |
| v. | **Partially Under Seal**<br>**Public Version - Redacted** |
| PAUL O. PARADIS, | **SENTENCING MEMORANDUM OF PAUL O. PARADIS; EXHIBITS** |
| Defendant. | Hon. Stanley Blumenfeld, Jr.<br>Courtroom 6C |
| | Action Filed:     November 29, 2021<br>Sentencing Date: June 27, 2023<br>Hearing Time:     8:00 a.m. |

# NOTICE OF SUBMISSION

TO THE COURT, CLERK, ALL PARTIES OF RECORD AND THEIR ATTORNEYS:

PLEASE TAKE NOTICE that Paul O. Paradis, by and through his undersigned attorneys of record, in connection with the sentencing hearing scheduled for June 27, 2023, hereby respectfully submit the following:

(i) **Sentencing Memorandum of Paul O. Paradis (Partially Under Seal)**

(ii) **Exhibit A:  Declaration of Paul O. Paradis Detailing Cooperation With Federal Law Enforcement; Exhibits A-01 – A-06 (Under Seal)**

(iii) **Exhibit B:  Declaration of Paul O. Paradis Detailing Cooperation With The State Bar of California; Exhibits B-01 – B-18 (Under Seal)**

(iv) **Exhibit C:  Declaration of Paul O. Paradis Detailing Cooperation With *Bradshaw* Class Counsel (Under Seal)**

(v) **Exhibit D:  Paul O. Paradis Letter to the Court (Partially Under Seal)**

(vi) **Exhibit E:  Physicians Letters and Medical Information (Exhibits E-01 – E-03) (Under Seal)**

(vii) **Exhibit F:  Declarations of California State Bar Attorneys Regarding Paul Paradis' Cooperation With the State Bar (Under Seal)**

(viii) **Exhibit G:  Declaration of Filippo Marchino (*Bradshaw* Class Counsel) In Support of Paul Paradis' Sentencing (Under Seal)**

(ix) **Exhibit H:  Letters In Support of Paul Paradis' Character (Exhibits H-01 – H-07)**

(x) **Objection To Presentencing Report (PSR) (Partially Under Seal)**

Dated: June 13, 2023

WINSTON & STRAWN LLP

By: _____
DAVID C. SCHEPER
JEFFREY L. STEINFELD
Attorneys for Defendant
PAUL O. PARADIS

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION.........................................................................................1

II.   PROCEDURAL BACKGROUND.............................................................2

    A.   The Cooperation Plea Agreement ....................................................2

    B.   The PSR and USPO's Recommendation Letter ...............................2

    C.   Substantial Assistance and the Government's Anticipated §5K1.1 Motion.............................................................................................2

III.  MR. PARADIS' BACKGROUND ............................................................3

    A.   Mr. Paradis Personal History and Education ...................................4

    B.   Mr. Paradis As a Parent, Steward and Mentor ................................4

    C.   Mr. Paradis' 30 Years of Employment and Legal Accomplishments.............................................................................5

IV.   SENTENCING ...........................................................................................6

    A.   Nature and Circumstances of the Offense ........................................7

    B.   Summary of Mr. Paradis' Cooperation .............................................9

        1.   Paradis' Cooperation with Federal Law Enforcement.................9

        2.   Mr. Paradis' Cooperation with the California State Bar ............12

        3.   Mr. Paradis' Cooperation in the *Bradshaw* Action ...................13

V.    APPLICATION OF GUIDELINES DEPARTURES AND VARIANCES 14

    A.   Order Of Application.......................................................................14

    B.   Extraordinary Acceptance of Responsibility ..................................14

    C.   Substantial Assistance and Collateral Cooperation (§5K1.1 / *Booker*).........................................................................................15

    D.   Voluntary Disclosure of Additional Offenses (§5K2.16)...............15

    E.   Physical Condition (§5H1.4) & Mental Condition (§5H1.3)...............16

    F.   Other Mitigating Factors ................................................................18

        1.   Education/Employment History and Lack of Law Enforcement Contacts..........................................................18

| | | | |
|---|---|---|---|
| | **2.** | Truthfulness With Authorities | 19 |
| | **3.** | Personal Hardship, Bankruptcy, and Loss of Law License | 19 |
| **G.** | | The Need To Avoid Unwarranted Disparities | 20 |
| **VI.** | | <u>CONCLUSION</u> | 20 |

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Kimbrough v. U.S.A.*,
   552 U.S. 85 (2007) ............................................................................ 6, 8

*U.S.A. v. Brown*,
   985 F.2d 478 (9th Cir. 1993)................................................................ 15

*U.S.A. v. David F. Alexander*,
   Case No. 2:21-cr-00572............................................... 10, 15, 18, 19

*U.S.A. v. David H. Wright*,
   Case No. 2:21-cr-00559.................................................................*passim*

*U.S.A. v. DeCinces*,
   SACR-12-00269-AG (C.D. Cal.)...........................................15, 18

*U.S.A. v. Garcia-Lopez*,
   691 F. Supp. 2d 1099 (C.D. Cal. 2010)........................................ 18

*U.S.A. v. Jones*,
   158 F.3d 492 (10th Cir. 1998) ...............................................*passim*

*U.S.A. v. Patillo*,
   817 F. Supp. 839 (C.D. Cal. 1993)................................................ 19

*U.S.A. v. Thomas Peters*,
   Case No. 2:22-cr-00009..............................................................*passim*

*U.S.A. v. Udo*,
   963 F.2d 1318 (9th Cir. 1992) ................................................ 2, 15

**Statutes**

18 U.S.C. § 666 ....................................................................................2

18 U.S.C. § 922(a)(3) .......................................................................... 10

18 U.S.C. § 922(o) .............................................................................. 10

18 U.S.C. § 3553.................................................................................. 18

18 U.S.C. § 3553(a)............................................................................. 19

18 U.S.C § 3553(a)(1).......................................................................... 19

18 U.S.C. § 3553(a)(1-7)....................................................................... 6

18 U.S.C. § 3553(a)(2)(D)................................................................... 18

18 U.S.C. § 3553(a)(6).............................................................. 18, 19, 20

U.S.S.G. § 1B1.1 ........................................................................................... 14

U.S.S.G. § 3E1.1 ........................................................................................... 15

U.S.S.G. § 3E1.1(a) ....................................................................................... 14

U.S.S.G. § 5G.1.1(a) ...................................................................................... 14

U.S.S.G. § 5G1.1(a) ....................................................................................... 14

U.S.S.G. § 5H1.3 ....................................................................................16, 17

U.S.S.G. § 5H1.3-4 ........................................................................................ 16

U.S.S.G. § 5H1.4 ...................................................................................2, 16, 17

U.S.S.G. § 5H1.5 ........................................................................................... 19

U.S.S.G. § 5K1.1 ...................................................................................2, 3, 15

U.S.S.G. § 5K2.16 ..................................................................................... 2, 16

SENTENCING MEMORANDUM OF PAUL O. PARADIS

1    **I.     INTRODUCTION**

2          The actions that bring Paul Paradis before this Court were, as admitted in the

3    attached letter from Mr. Paradis (Exhibit D), reprehensible.   A stain on Mr. Paradis'

4    then fifty-one years of law-abiding life.   On January 28, 2022, Mr. Paradis pled guilty

5    to having accepted a $2 million kickback in connection with the *Jones v. City of Los*

6    *Angeles* lawsuit (the "*Jones* Action").   Mr. Paradis also admitted to additional

7    wrongdoing in the factual basis attached to his plea agreement. He did so for one reason

8    – because he believed what he did was wrong, and it was necessary for him to take

9    responsibility for all of his misconduct.  (Ex. D at 1).

10         Nevertheless, it has been said that the best way to take responsibility for having

11   told lies and engaged in misconduct is to tell the truth and work hard to fully expose the

12   truth to make things right.   On March 15, 2019, Mr. Paradis turned those words into

13   actions and embarked on a truth-telling mission by telling the government everything

14   about his own crimes and everything he could remember about secret but widespread

15   corruption in the Los Angeles Department of Water and Power ("LADWP"), the Los

16   Angeles City Attorney's Office, and various pockets of the private sector.

17         The government has described Mr. Paradis' cooperation as "extraordinary" and

18   "unprecedented," and as result thereof, the government obtained the conviction of three

19   high-ranking city officials, and investigated many other potential wrongdoers.   After

20   his work for the government came to an end, Mr. Paradis began cooperating with the

21   State Bar of California ("State Bar" or "Bar") in the Bar's investigation into attorney

22   misconduct. The State Bar has also repeatedly deemed Mr. Paradis' cooperation in its

23   "unprecedented" investigation as "extraordinary," "necessary," and "critical."

24   Mr. Paradis' work to tell the truth and atone for his misconduct remains ongoing – even

25   after four long years.   Mr. Paradis respectfully requests that the Court impose a

26   probationary sentence to enable Mr. Paradis to complete his effort to atone for his own

27   crimes and ethical misconduct and expose the previously unknown crimes and ethical

28   breaches of others.

## II. PROCEDURAL BACKGROUND

### A. The Cooperation Plea Agreement

Paul Paradis' cooperation with federal prosecutors and law enforcement began on March 15, 2019, the day he met them and began answering their questions. At no time that day or ever did Mr. Paradis ask for or receive any form of immunity from the government. Thirty-two months later, after participating in 184 undercover operations, 12 interviews, and supporting numerous search warrants, Mr. Paradis signed a plea agreement filed in this Court on November 21, 2021 (Dkt. 6). On January 28, 2022, Mr. Paradis pled guilty to a one-count information charging bribery in violation of 18 U.S.C. § 666 (Dkt. 1). Pursuant to the plea agreement Mr. Paradis agreed to continue the cooperation he voluntarily began in March 2015 and volunteered additionally to cooperate with any other appropriate authority, including the California State Bar and the bar of any other state. *See* Dkt. 6 ¶3. The plea agreement requires the government "to move the court pursuant to U.S.S.G. § 5K1.1 to fix an offense level and corresponding guideline range below that otherwise dictated by the sentencing guidelines, and to recommend a sentence at the low end of, or below this reduced range." *Id.* ¶6(c). The agreement also allows the parties to seek "a sentence outside the sentencing range established by the Sentencing Guidelines" and Defendant may seek additional downward departures including under U.S.S.G. §5H1.4 (physical condition) and §5k2.16 (voluntary disclosure.) *Id.* ¶¶15-16.

### B. The PSR and USPO's Recommendation Letter

The Presentence Report ("PSR") and the USPO's Recommendation Letter are addressed in the contemporaneously filed Objection To The Presentence Investigation Report and Recommendation, filed herewith. Mr. Paradis served his objections on the USPO on June 21, 2022. Mr. Paradis will respond to the final PSR if he chooses to file a reply memorandum.

### C. Substantial Assistance and the Government's Anticipated §5K1.1 Motion

Mr. Paradis understands that pursuant to §5K1.1, the government will move this

Court for a downward departure to account for Mr. Paradis' cooperation to the government, which the government has termed "extraordinary" and "unprecedented," as well as Mr. Paradis' continuing cooperation with the State Bar of California. Mr. Paradis requests that the Court grant such motion, and notes that once the motion is made, the Court may depart further than the government recommends. *See U.S.A. v. Udo*, 963 F.2d 1318, 1319 (9th Cir. 1992) ("district court erred in believing that it did not have the authority to depart below the government's recommendation"). If necessary, Mr. Paradis will address the §5K1.1 motion in his reply memorandum after the government files its motion detailing Mr. Paradis' cooperation.

### III.   <u>MR. PARADIS' BACKGROUND</u>

Mr. Paradis is 60-years-old with serious medical conditions including a ███ ███████.[1]  Unsurprisingly, Mr. Paradis' health continued to deteriorate after he began his undercover cooperation in March 2019. Mr. Paradis is a loving father, and for his first 51-years provided for his family as a law-abiding person. Those who have known him for decades, who are aware of his unethical and criminal conduct, nevertheless still describe him as of "superior integrity" with "strong morals" and a "commitment to ethical behavior," "the truth" and "justice." Ex. H.  His ex-wife describes him as a "positive force in our family and community," and explaining that he has always gone "out of his way to help those who were less fortunate." Ex. H-03. Even employers emphasized Mr. Paradis' "stalwart parenting," and care for his (Paradis') children with medical issues.

After a shattering divorce, Mr. Paradis worked with the Los Angeles City Attorney's Office and LADWP and made multiple poor decisions.  Mr. Paradis deeply regrets the mistakes he made and crimes he committed.  He has worked tirelessly for over fifty-one months to right his wrongs and will continue doing so. People who have spoken to Mr. Paradis describe his remorse and acceptance of responsibility as genuine

---

[1] Mr. Paradis' ███████ conditions are described more fully in Section V.E. and Exhibit E

and reflective of the Paul Paradis they know.  Ex. H-01 – H-07.  His supporters include David Peterson, Esq., a community leader and LADWP ratepayer, who described Mr. Paradis' remedial work as "invaluable to all the citizens of Los Angeles," emphasizing that "allowing him to continue his work to make amends" will "be beneficial for the community at large" and "his continued disclosures will benefit all [] Los Angeles' citizens."  Ex. H-04.  Mr. Paradis presents no risk of reoffending and poses no danger to the community.  *See* Ex. H-01 – H-07.

## A.   Mr. Paradis Personal History and Education

Growing up in a fractured family, Mr. Paradis experienced the struggles of poverty, at times relying on government assistance during childhood. At an early age, Mr. Paradis contributed to his family by working morning and afternoon paper routes. Throughout middle and high school, he supported his family by working over 30 hours per week.

Throughout college, Mr. Paradis always worked one – and frequently two – jobs to pay his tuition and living expenses.  Despite working throughout school, Mr. Paradis was able to achieve high academic standing with a major in both Economics and Finance, finishing college in only three and a half years as a result of course overloading due to his financial adversity.  Immediately after college, Mr. Paradis married and moved to New York City where he worked on Wall Street as a portfolio manager during the day and attended law school at night.  In law school, Mr. Paradis was a member of the New York Law School Law Review.  Based on academic achievement and work experience, Mr. Paradis was recruited by multiple Wall Street law firms, but chose to become a plaintiffs' attorney because he wanted to protect those incapable of protecting themselves.

## B.   Mr. Paradis As a Parent, Steward and Mentor

In addition to caring for his own children, Mr. Paradis worked hard to provide opportunities for the children of others. When he was a Boy Scout, Mr. Paradis drew inspiration from his troop leader, Mr. Robert Morin. Mr. Morin paid for Mr. Paradis to

attend Boy Scout Summer Camp every summer because Mr. Paradis' family could not afford it. Paul Paradis never forgot what Mr. Morin did for him when he was a kid and paid Mr. Morin's kindness forward for the benefit of others.

Among Mr. Paradis' kindnesses were: (i) volunteering to coach Little League in Ridgewood, New Jersey for 7 years; (ii) donating to The Village School for Children Montessori School, helping to create the first ever technology and mobile computing lab; (iii) joining the Franklin & Marshall College Parent's Council and advising college administrators and faculty concerning strategic planning issues and interviewing applicants for admission; (iv) sponsoring the John Marshall Pre-Law Society at Franklin & Marshall College and creating a pre-law internship program at his law firm; and (v) being one of the largest donors to the Make-A-Wish Foundation in middle Tennessee.

### C.   Mr. Paradis' 30 Years of Employment and Legal Accomplishments

Before his fall, for over thirty years Mr. Paradis was an extremely accomplished plaintiffs' attorney who provided substantial recoveries to victims of financial and consumer fraud. His efforts resulted in recovery of hundreds of millions of dollars for these victims.[2]

For example, as a young attorney, Mr. Paradis served as the lead associate in the *In re: Salomon Brothers Treasury Litigation* before the Hon. Robert P. Patterson in the SDNY that resulted in a then record-breaking $100 million recovery for victims of a historic financial fraud perpetrated by a rogue band of Salomon traders and hedge funds. Following approval of the then-historic settlement, Judge Patterson ordered that Mr. Paradis work directly with the SEC to aid the SEC in formulating the distribution plan for monies the SEC obtained through an enforcement action against Salomon.

Later, Mr. Paradis was appointed by the Hon. Melinda Harmon as one of three Co-Lead Counsel in the historic *In re Enron Securities Litigation*. Mr. Paradis was appointed as Lead Counsel for the "Private Action Plaintiffs' Group" where he was

---

[2] Following entry of Paradis' guilty plea in this matter, Mr. Paradis was disbarred from practicing law, effective January 28, 2022.

responsible for managing and reporting to the Court on the activities of more than 12 law firms who were each litigating private actions against Enron and banks involved in the massive fraud.  With his co-counsel, Mr. Paradis was responsible for obtaining a recovery of $2.4 billion for investors who had been damaged by defendants' wrongful acts.

On two occasions, Mr. Paradis was appointed Lead Counsel by the late Judge Manuel L. Real of this Court in cases resulting in recoveries in the millions for buyers of defective cars and even more millions for shareholders damaged in the Vitesse "options back dating" scheme. Mr. Paradis was also responsible for the recovery of hundreds of millions of dollars in consumer class actions on behalf of consumers who had been damaged by the sale of defectively designed and engineered products by a variety of companies and their management.

Perhaps more importantly, throughout his career Mr. Paradis performed significant *pro bono* work that had very meaningful consequences.  For example, Mr. Paradis successfully defended a wrongfully accused U.S. Secret Service Agent who faced charges regarding an alleged unauthorized high-speed vehicle chase and shooting incident, resulting in the dismissal of the two most serious charges against the Agent.

Paradis later represented another U.S. Secret Service Agent who was sued and falsely accused of conducting an illegal search, resulting in a complete dismissal.

And, by way of final example, Mr. Paradis, on a *pro bono* basis, represented the former Chief Financial Officer of a publicly traded company falsely accused of violating the Securities Exchange Act. Mr. Paradis obtained complete dismissal for his client, who has submitted a letter attesting to Mr. Paradis' character.  Ex. H-02.

## IV.   SENTENCING

A court should "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing – just punishment and specific and general deterrence – and the Court considers the factors in 18 U.S.C. §3553(a)(1-7). *See Kimbrough v. U.S.A.*, 552 U.S. 85, 91 (2007).  Mr. Paradis seeks a non-custodial

1    sentence for the reasons set forth and the legal principles set forth below.

2                    **A.      Nature and Circumstances of the Offense**

3            In September 2013, the Los Angeles Department of Water and Power (LADWP)

4    introduced a new customer information and billing system (CIS) to manage vital

5    operations, including power and water usage billing. PricewaterhouseCoopers, LLP

6    (PwC) implemented the new "Customer Care & Billing System" (CC&B System) to

7    replace the outdated billing system that had been in use for forty years. Unfortunately,

8    the launch of the LADWP's CC&B System turned into a disaster.

9            By the end of 2014, the LADWP faced a severe public relations crisis as it

10   struggled to provide reliable billing services to over 1.4 million ratepayers.  More than

11   800,000 LADWP customers were incorrectly overcharged.  At the same time, the City

12   experienced losses of hundreds of millions of dollars in unbilled revenue due to the

13   CC&B System's billing defects.  Media scrutiny intensified, targeting the City and its

14   elected leaders for their failure to address ratepayer complaints. The City faced four

15   billing class action lawsuits in 2014 and early 2015, further exacerbating the situation.

16           On December 16, 2014, Mr. Paradis and his co-counsel, Paul Kiesel, met with

17   two top Los Angeles City Attorney officials, Chief Deputy City Attorney Jim Clark and

18   Civil Chief Thomas Peters, regarding a potential consumer class action against PwC.

19   Factual Basis ¶2.  At the meeting, the City Attorney officials asked Mr. Paradis and

20   Kiesel to represent the City in a lawsuit against PwC.  *Id.*  At this meeting, Mr. Paradis

21   disclosed to the City Attorney officials that he also represented Antwon Jones, a

22   LADWP ratepayer, for the purposes of litigation related to the LAWDWP billing

23   system.  *Id.*

24           On or about February 23, 2015, Mr. Paradis and Kiesel met with Clark and Peters

25   at the City Attorney's Office.  *Id.* ¶5.  During the meeting, Clark directed and authorized

26   Mr. Paradis and Kiesel to find outside counsel that would be friendly to the City and its

27   litigation goals to supposedly represent Mr. Jones in a class action against the City.  *Id.*

28   This strategy became known as the "white knight" strategy.  The City's goal was to use

the forthcoming *Jones v. City of Los Angeles* lawsuit to quickly settle ***all*** existing LADWP-billing-related claims against the City on the City's desired terms, including those claims asserted in four other consumer class actions.  *Id.*; *see* Exhibit █████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████

With Clark's authorization and direction, Mr. Paradis and Kiesel created the collusive "white knight" suit by hand-picking friendly plaintiff's lawyers.  Mr. Paradis contacted an Ohio attorney, █████████████, and Kiesel contacted ██████████ of Los Angeles to file a complaint against the City.  Factual Basis ¶6.  Mr. Paradis explained to █████████ that the City wanted the case "pre-settled" on the City's desired terms.  *Id.*

At Clark's direction, and pursuant to the white knight strategy, using non-public information provided to him by members of the City Attorney's office and LADWP, Mr. Paradis drafted: (1) the J*ones v. City* class action against the City; and (2) a detailed settlement demand letter.  *Id.* at ¶¶15-16.

Having recently experienced a mentally and financially devastating divorce, Mr. Paradis wrongfully performed work in the *Jones* Action for █████████ in exchange for an undisclosed and illegal $2.175 million dollars.  *Id.* ¶30.  Mr. Paradis' deeply regrets that decision and openly admits that his actions were wrong.  Mr. Paradis' reprehensible actions have ruined his life.

Importantly, and as detailed in the ████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████ [3] *See* Exhibit ████████████████████████████.

---

[3] As the Court noted during the Peters' Sentencing, the accuracy of the *Jones* settlement payouts was confirmed by replacement Class Counsel and an independent auditing firm.

**B.     Summary of Mr. Paradis' Cooperation**

Immediately upon the potential unraveling of the collusive litigation scheme, Mr. Paradis requested a meeting with the U.S. Attorney's Office ("USAO") and FBI.  At the very first meeting on March 15, 2019, Mr. Paradis fully acknowledged his wrongful conduct and role in the City's illegal scheme.  Mr. Paradis immediately agreed to fully cooperate with the government and provided a wide range of factual details concerning the wrongful, illegal, and unethical activities that Mr. Paradis had knowledge of involving the City, including but not limited to, the collusive litigation scheme in the *Jones* Action.

Demonstrating Mr. Paradis' commitment to atoning for his misconduct, Mr. Paradis immediately volunteered to work with the USAO and FBI as an undercover operative in order to obtain and provide the government with evidence of the widespread corruption and illegal activities at the City Attorney's Office, LADWP, and as otherwise instructed.  The government quickly accepted Mr. Paradis' offer.

**1.     Paradis' Cooperation with Federal Law Enforcement**

Beginning on March 15, 2019, and continuing for the next 29 months, Mr. Paradis participated in at least ***12 proffer sessions*** with the government and ***conducted 184 undercover operations at the FBI's direction and supervision.***[4]  During these meetings and operations, Mr. Paradis obtained and provided evidence of widespread corruption, fraud, and other illegal and unethical activities by City Attorney and LADWP officials and others.  Mr. Paradis' cooperation included the collusive litigation scheme, and but also involved unrelated investigations and conduct. Despite his health issues,[5] Mr. Paradis conducted ***at least 23 operations during the height of the COVID-***

---

[4]  Attached hereto as Exhibit A is the Declaration of Paul O. Paradis Detailing Cooperation With Federal Law Enforcemen̶ ██████████████████
█████ ̶erations.██████████████
█████████ibit██████
█.

[5] ████████████us health conditions are ████████████
████████████.

1   *19 pandemic*, *where risk of infection was high especially given Mr. Paradis' age and*
2   *underlying conditions.*

3       Many of these COVID time-period operations were dangerous for another
4   reason: ███████████████████████████████████████
5   ███████████████████████████████████████████
6   ███████████████████████████████████████████
7   ███████████████████████████████████████████
8   ███████████████████████████████████████ Ex. ███
9   ████████████ Later, Mr. Paradis participated in other dangerous operations
10  including an armed raid of Wright's residence by 8-10 FBI Agents with weapons drawn.
11  Ex. ████████████████; ███, ██████████████████.

12      The government has described Mr. Paradis' cooperation as "extraordinary,"
13  "unprecedented," and "pretty great." The government has also informed Mr. Paradis,
14  through counsel, that Mr. Paradis was "largely responsible" and "very much involved,"
15  in the convictions of LADWP General Manager David Wright, LADWP CISO David
16  Alexander, and LA City Attorney Civil Chief, Thomas Peters.[6] This is confirmed by:
17  (1) the informations filed in *Wright* and *Alexander*, which collectively contain 56
18  paragraphs detailing, in part, Mr. Paradis' undercover operations; and (2) ███████
19  ████████████████████████████████████████████
20  █████████████████████
21     ████████████████████████████████████
22  ████████████████████████████████████████████
23  ████████████████████████████████████████████
24  ███████████████████████████████████████████
25  ████████████████████████████████████████. █

26

27  _____
    [6] *U.S.A. v. David H. Wright,* Case No. 2:21-cr-00559, *U.S.A. v. David F. Alexander,*
28  Case No. 2:21-cr-00572, *U.S.A. v. Thomas Peters*, Case No. 2:22-cr-00009,
    respectively.

SENTENCING MEMORANDUM OF PAUL O. PARADIS

## 2.   Mr. Paradis' Cooperation with the California State Bar

[redacted]

---

[7] Exhibit B is the D[redacted]

SENTENCING MEMORANDUM OF PAUL O. PARADIS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26       **3.**     **Mr. Paradis' Cooperation in the *Bradshaw* Action**

27       In addition to his federal and state cooperation, Mr. Paradis is also cooperating

28 with Class Counsel in the *Bradshaw* Action, which seeks to hold wrongdoers

accountable for fraud and deceit upon the people of Los Angeles.  Mr. Paradis'
cooperation is detailed in **Exhibits C and G**, Declarations of Mr. Paradis and *Bradshaw*
Class Counsel, respectively.  *Bradshaw* Class Counsel describes ████████

████████████████████████████████████████████████████████████████

## V.   APPLICATION OF GUIDELINES DEPARTURES AND VARIANCES

### A.   Order Of Application

Guidelines §1B1.1 instructs that the "court shall," apply the guidelines in a
particular order.  Relevant here, downward departures (other than basic acceptance of
responsibility under §3E1.1(a)) are applied ***after*** §5G1.1(a), which drops the pre-
departure guideline range and offense level to the statutory maximum.  *See* U.S.S.G.
§1B1.1 ("the Court shall consider Parts H and K of Chapter 5, Specific Offender
Characteristics and Departures" ***after*** applying, *inter alia*, "(7) … Parts B through G of
Chapter Five"); *Id.* §5G1.1(a) ("Where the statutorily authorized maximum sentence is
less than the minimum of the applicable guidelines range, the statutory authorized
maximum sentence shall be the guideline sentence").  Here, as set forth in the Plea
Agreement, Mr. Paradis' total offense level is 36. Dkt. 6 at 9.  After applying the 3-level
standard acceptance of responsibility departure, the offense level is 33, which carries a
sentence of 135-168, above the statutory maximum of 120 months.  Accordingly, with
a criminal history of 0, 120 months corresponds with an **offense level of 30** (97-121
months), which should be the starting point for all other departures and variances.

### B.   Extraordinary Acceptance of Responsibility

While the Plea Agreement provides that Mr. Paradis is entitled to the standard 3-
level reduction under U.S.S.G. §3E1.1(a) for acceptance of responsibility, Mr. Paradis'
immediate and extensive acceptance supports a further downward *Booker* variance.  *See*
*U.S.A. v. Brown*, 985 F.2d 478, 482-83 (9th Cir. 1993) (court did not err in making
additional reduction beyond that provided by §3E1.1).  Indeed in the related cases of
*Wright* and *Alexander*, the government recommended ***additional three-level variances***
***beyond §3E1.1*** for acceptance, even though in both cases, defendants Wright and

Alexander initially denied wrongdoing and lied to the government (unlike Mr. Paradis who immediately came "clean" and was always truthful and forthcoming). Indeed, the government noted that the additional variances were "warrant[ed]" despite the initial lies, because even a defendant who "exercised his rights to indictment by grand jury, production of full pretrial discovery, and fulsome litigation" would be entitled to the bare minimum three levels under *3E1.1*. *See Wright, 2:21-cr-00559*, Dkt. 38 at 22.

## C. Substantial Assistance and Collateral Cooperation (§5K1.1 / *Booker*)

As detailed *supra*, Mr. Paradis' cooperation and substantial assistance to the government and the State Bar has repeatedly been described by both entities ▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and has resulted in substantial yield including convictions of high-ranking public officials and ▓▓▓▓▓▓▓. As noted, the Court is not limited to the government's recommendation and may further depart downward under §5K1.1 and *Booker*. *See Udo*, 963 F.2d at 1319. Given that in *U.S. v. Peters*, the government recommended a seven-level departure for federal and Bar cooperation, 2:22-cr-00009-SB, Dkt. 42 at 2, and the exponential difference between Mr. Paradis' cooperation and Peters', Mr. Paradis requests that the Court depart at least 22-levels based on Mr. Paradis' extraordinary and unprecedented cooperation.[8]

## D. Voluntary Disclosure of Additional Offenses (§5K2.16)

As set forth in the Plea Agreement, Mr. Paradis requests a further departure under §5K2.16, because he "voluntarily disclose[d] to authorities the existence of, and accept[ed] responsibility for, the offense prior to the discovery of such offense, and [] such offense was unlikely to have been discovered otherwise." U.S.S.G. §5K2.16.

Here, the government was investigating the collusive litigation scheme in connection with the *Jones* Action, and Mr. Paradis pled guilty to a kickback therein

---

[8] In *U.S.A. v. DeCinces*, SACR-12-00269-AG (C.D. Cal.) (Dkt. 965 at 3) the government also recommended (and the court granted) a seven-level §5K1.1 departure even though the defendant maintained his innocence for a decade, was found guilty on 14-counts following trial and did not cooperate until *after* the jury verdict. Moreover, the defendant performed no undercover work and his cooperation did not result in any charges or convictions. Mr. Paradis has earned a far greater departure.

(detailed in Sections I-II of the Factual Basis).  However, Mr. Paradis' Information, Factual Basis, and offense level incorporate conduct and enhancements (multiple bribes and high-level position) based on *other offenses*, which Mr. Paradis voluntarily disclosed despite the government being unlikely to discover them.  As set forth in Sections III-IV of the Factual Basis and Section C of the Information, Mr. Paradis voluntarily disclosed a separate scheme, entitled the "Aventador Scheme," which included conspiracy, honest services fraud, and federal program bribery.  The government was unlikely to discover such offenses absent Mr. Paradis' voluntary disclosure because witnesses involved in the collusive litigation scheme were uninvolved in and unaware of the Aventador Scheme.  Rather, the scheme was principally between Mr. Paradis and David Wright, and as this Court is aware, the government was only put onto Wright's wrongdoing by Mr. Paradis.  Accordingly, Mr. Paradis respectfully requests a downward variance under §5K2.16.

### E.    Physical Condition (§5H1.4) & Mental Condition (§5H1.3)

Mr. Paradis respectfully requests departures for his physical, mental, and emotional conditions under §§5H1.3-4 and *Booker*.  Mr. Paradis

SENTENCING MEMORANDUM OF PAUL O. PARADIS

1 ██████████████████████████████████████████████

2 ████████████████████████████████████████████████████

3 ████████████████████████████████████████████████████

4 ██████████████████████████████████████████████████

5 ██████████████████████████████████████████████████

6 ████████████████████████████████████████████████████

7 ██████████████████████████████████████████████████

8 ██████████████████████████████████████████████████

9 ██████████████████████████████████████████████████

10 ████████████████████████████████████████████████████

11 ████████████████████████████████████████████████████

12 ██████████████████████████████████████████████████

13 ████████████████████████████████████████████████████

14 ██████████████████████████████████████████████████

15 ████████████████████████████████████████████████████

16 ████████████████████████████████████████████████████

17 ████████████████████████████████████████████████████

18 ████████████████████████████████████████████████████

19 ████████████████████████████████████████████████████

20 ██████████████████████████████████████████████████

21 ████████████████████████████████████████████████████

22 ████████████████████████████████████.

23    Moreover, a substantial departure based on Mr. Paradis' health is consistent with

24 prior recommendations and sentences in this District, including in the related cases of

25 *Wright*, *Alexander*, and *Peters*.  *See* 18 U.S.C. § 3553(a)(6) (the court should consider

26 "the need to avoid unwarranted sentence disparities among defendants with similar

27 records").  In *Wright*, the PSR recommended, and this Court's sentence reflected a "***six***

28 ***level downward variance***" based on, *inter alia*, the defendant's "***medical and emotional***

*issues,*" specifically "the stress of his job, the loneliness of living alone in Los Angeles … a resurgence of emotional issues that were never properly dealt with in his youth, and grief over his father's death." 2:21-cr-00559-SB, Dkt. 38 at 10-11, n.4, Dkt. 39 at 11.  Likewise, in *Alexander*, the PSR recommended a "*four-level variance*" based on the defendant's "abusive childhood during his formative years" and his "people pleaser mentality." No. 2:21-cr-00572-SB, Dkt. 29 at 17.  And in *DeCinces*, the PSR and this District applied a "*seven-level Booker variance*" because, *inter alia*, *the defendant "is 68 years old," "suffers from several serious medical disorders" and "depression and anxiety*."  SACR-12-000269(b)-AG, Dkt. 965 at 4 fn. 2.  Mr. Paradis' ███████ ███ conditions ███████████████████████████████████.

Finally, 18. U.S.C. §3553 provides that in fashioning a sentence, courts consider the "characteristics of the defendant" and the need to "provide the defendant with needed … medical care." *See* 18 U.S.C. § 3553(a)(2)(D); *U.S.A. v. Garcia-Lopez*, 691 F. Supp. 2d 1099, 1105 (C.D. Cal. 2010) (imposing a sentence substantially below Guidelines under *Booker* because, among other factors, defendant "suffers from a serious medical condition for which she has had multiple brain surgeries and lengthy hospital stays").  Relevant here, there are only a ███████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████████.  Accordingly, for each of the foregoing reasons, Mr. Paradis respectfully requests a departure based on his health consistent with prior cases ███████████████.

### F.    Other Mitigating Factors

In addition to the reasons discussed, the Court should grant additional variances of at least four levels based on mitigating factors under 18 U.S.C. § 3553(a), applied in the related cases of *Wright*, *Alexander*, and *Peters*, and throughout the District.

### 1.    Education/Employment History and Lack of Law Enforcement Contacts

Pursuant to 18 U.S.C § 3553(a)(1), Mr. Paradis respectfully requests that the

Court consider his education and employment history and lack of prior law enforcement contacts, and grant a downward variance as the PSR recommended and sentenced reflected in *Wright, Alexander and Peters*. *See* 18 U.S.C. §3553(a)(6). Mr. Paradis' extensive educational background includes a Bachelor of Science, a Juris Doctor, and he was pursuing a master's degree. His successful employment history, including founding a law firm and playing a significant role in the *Enron* case, further demonstrates his predominant character. As the PSR recognized, Mr. Paradis has no prior convictions or any "other criminal conduct" including at the county, state, and national level. PSR at 19. Mr. Paradis' lack of criminal history and impressive educational and employment records are equally if not more compelling than those found in *Wright, Alexander,* and *Peters*. Accordingly, under 18 U.S.C. §3553(a)(6) and the related cases, the Court should grant a substantial downward variance based on Mr. Paradis' overall history and character.[10]

### 2. Truthfulness With Authorities

As noted, the Court should grant Mr. Paradis an additional departure of at least three levels for exceptional acceptance of responsibility and truthfulness, including his refusal to ask for any form of immunity when speaking with the government.

### 3. Personal Hardship, Bankruptcy, and Loss of Law License

Mr. Paradis' wrongful actions have ruined him. Mr. Paradis lost his job(s), his law license, suffered irreparable reputational harm, and filed for bankruptcy. Mr. Paradis's net worth is ***negative*** $4.5 million, he has ***negative*** monthly cash flows, has been in ***bankruptcy for over three years***, and ***owns no assets***. PSR, 24-25. Nevertheless, Mr. Paradis has done everything possible to be employed, *id.*, 23-24, and will do everything necessary to continue working post-sentencing.

---

[10] The Court can consider Mr. Paradis' employment history in determining an appropriate sentence. *See* U.S.S.G. § 5H1.5; *U.S.A. v. Patillo*, 817 F. Supp. 839, 845 (C.D. Cal. 1993) (defendant's stable employment was a justification for a departure); *U.S.A. v. Jones*, 158 F.3d 492, 498 (10th Cir. 1998).

1   Mr. Paradis has not maintained the benefit of his wrongful conduct and has

2   returned whatever he was able to.  Mr. Paradis █████████████████████████

3   ████████████████████████████████████████████████████████████████████

4   █████████████████.  Importantly, the cybersecurity work his company did for the City

5   was real work providing substantial value – there is no claim that the work was not

6   performed, and the company employed over 40 people.  When Mr. Paradis resigned, he

7   lent the company $500,000 so it could continue to make payroll.  Mr. Paradis has not

8   and will not recoup that money as the company is now also bankrupt.[11]  Accordingly,

9   as in *Wright* and *Peters*, the Court should grant a variance based on defendant's lack of

10  success in obtaining corrupt benefits, and his other losses and negative consequences.

11  ### G.    The Need To Avoid Unwarranted Disparities

12  In determining a sentence, the Court should consider the need for unwarranted

13  sentence disparities. 18 U.S.C. § 3553(a)(6).  Here, the only related case defendant that

14  also cooperated was Peters.  But Mr. Paradis' cooperation with both the government

15  and the Bar was and continues to be exponentially greater than Peters' (whose

16  cooperation Mr. Paradis' applauds and appreciates), and Peters' cooperation results

17  from that of Mr. Paradis.  Moreover, many of the other wrongdoers have not even been

18  charged and face no criminal penalties.  And, Mr. Paradis is as much as or more

19  deserving of the departures/variances given to other defendants.  Accordingly, a non-

20  custodial sentence would avoid unwarranted disparities, and award Mr. Paradis'

21  unmatched truthfulness and cooperation.

22  ## VI.   **CONCLUSION**

23  Mr. Paradis respectfully requests that the Court impose a non-custodial sentence

24  that will allow Mr. Paradis to continue his tireless cooperation with the State Bar and

25  others.  Such a sentence will reflect that crime does not pay, but unprecedented

26  cooperation, truthfulness, and atonement does.

27

28  [11] The City refused to pay the company $2.2 million for work done, despite receiving the benefit.

Dated: June 13, 2023    WINSTON & STRAWN LLP

By:
DAVID C. SCHEPER
JEFFREY L. STEINFELD
Attorneys for Defendant
PAUL O. PARADIS

## Sentencing Memorandum of Paul O. Paradis
## Master Exhibit Index



| Exhibit | Document |
|---------|----------|
| Exhibit A | Declaration of Paul O. Paradis Detailing Cooperation With Federal Law Enforcement |
| A-01 | █████████████████████████ |
| A-02 | ███████████████████████████████ |
| A-03 | ██████████ ██ ████████████ |
| A-04 | █████████████ █ ██████████ |
| A-05 | ████████████ █ ███████████ |
| A-06 | ██████████████████ |
| | |
| Exhibit B | Declaration of Paul O. Paradis Detailing Cooperation With The State Bar of California |
| B-01 | ████████████████ |
| B-02 | █████████████████████ |
| B-03 | ███████████████████████ |
| B-04 | ████████████ █ █████████████████ |
| B-05 | █████████████████ |
| B-06 | ███████████████████████ |
| B-07 | ████████████████████ |
| B-08 | ████████████████████ |
| B-09 | ██████████████████ |
| B-10 | █████████████████████ |
| B-11 | █████████████████ |
| B-12 | ███████████████████████████ |
| B-13 | ██████████████████████████ |
| B-14 | ███████████████████████████ |
| B-15 | ████████████████ |

| B-16 | ███████████████████████████████ |
| B-17 | ████████████████████ |
| B-18 | ███████████████████████████ |

| | |
|---|---|
| **Exhibit C** | **Declaration of Paul O. Paradis Detailing Cooperation With *Bradshaw* Class Counsel** |

| | |
|---|---|
| **Exhibit D** | **Paul O. Paradis Letter to The Honorable Stanley Blumenfeld Jr.** |

| | |
|---|---|
| **Exhibit E** | **Physicians' Letters and Medication Information** |
| E-01 | January 22, 2022, Physician's Letter ████████████ |
| E-02 | June 8, 2023, Supplemental Letter ████████████ |
| E-03 | Memorandum re Paradis' ████████ Medication Management Program |

| | |
|---|---|
| **Exhibit F** | **Declarations of California State Bar Attorneys Regarding Paradis' Cooperation with the State Bar** |

| | |
|---|---|
| **Exhibit G** | **Declaration of Bradshaw Class Counsel (Filippo Marchino) In Support of Paradis' Sentencing** |

| | |
|---|---|
| **Exhibit H** | **Letters of Support Regarding Paradis' Character, Remorse, and Acceptance of Responsibility** |
| H-01 | Marc Gross, Esq. |
| H-02 | Mark Hirschhorn |
| H-03 | Lisa Paradis |
| H-04 | David Peterson, Esq. |
| H-05 | George Ricci, Esq. |
| H-06 | Karen Riebel, Esq |
| H-07 | Michael Rosenbaum, CPA |