*United States v. Paul O. Paradis,*
Case No. 2:21-cr-00540-SB
Sentencing Memorandum of Paul O. Paradis

# Exhibit D
# Paul O. Paradis Letter
# To
# The Honorable
# Stanley Blumenfeld Jr.

# Partially Under Seal

Hon. Stanley Blumenfeld, Jr.
United States District Judge
United States District Court
350 West First Street, Courtroom 6C
Los Angeles, California 90012

June 13, 2023

Dear Judge Blumenfeld:

      On January 28, 2022, I pled guilty to having accepted a $2 million kickback from Class Counsel, ▮▮▮▮▮▮▮▮▮▮, for work that I performed for attorney ▮▮▮▮▮▮ and his law firm in a collusive lawsuit known as the *Jones v. City* Action. I also admitted to additional wrongdoing in the factual basis attached to my plea agreement, which I signed every page of, and accept complete responsibility for. I pled guilty for one reason – because what I did was wrong and I strongly believed that it was necessary for me to take responsibility for my misconduct.

      I am deeply ashamed of my actions because they were completely reprehensible and went against everything that I have ever stood for. My actions ruined my life, and I have literally lost everything that I have ever worked for because of my choice to engage in this wrongful conduct.

      What started out as a plan to help City Attorney Mike Feuer and Chief Deputy City Attorney James Clark solve a burgeoning political crisis of confidence in the City's political leadership stemming from a failure to successfully manage the billing and business affairs of the Los Angeles Department of Water and Power, soon spiraled into a complex web of deceit, corruption and fraud without rival.

      The web of lies and deceit began with the "collusive litigation scheme" that Chief Deputy Clark asked me and others to corruptly implement to achieve a collusive settlement in the *Jones v. City* class action on terms and a schedule that had secretly been dictated by the City Attorney's office.

      Although the scheme *never* involved short-changing or under-paying class members, it was corrupt and fraudulent, and my conduct was reprehensible. The collusive scheme was essentially implemented to enable the City Attorney's office to "change the public narrative" and re-direct public criticism away from elected City Officials and toward

PricewaterhouseCoopers, LLP, the consulting firm that had implemented the LADWP's defective billing system. By quickly settling LADWP consumer claims on terms, conditions and a schedule that they exclusively secretly controlled, City officials quelled the political backlash that they feared would be harmful to their future political aspirations.

As with any deceptive and fraudulent scheme, however, the risk that the scheme itself could potentially be exposed always existed. Here, the risk that the City's "collusive litigation scheme" -- and that the ever-expanding web of lies and deception underlying this collusive scheme -- would be revealed to Los Angeles County Superior Court Judge Elihu Berle and the public at large reached its pinnacle in the fall of 2017. During the fall of 2017, a former employee of the law firm Kiesel Law LLP threatened to expose the City's corrupt scheme and all those involved in perpetrating the scheme unless she was paid the $1 million dollar extortion payment she had demanded to buy her silence.

Unwilling to bear the consequences that were likely to end his campaign for Mayor of Los Angeles before his campaign had even officially begun, during a meeting that began in his office at 4:45 pm on December 1, 2017, City Attorney Feuer participated in a meeting with his subordinates, including Thomas Peters, to discuss the extortion threat. During this meeting, Peters was directed to instruct Kiesel to pay the extortionist to buy her silence – else Kiesel risked being terminated as Special Counsel to the City in another litigation brought on behalf of the City.

When Kiesel was able to buy the extortionist's silence for $800,000, all involved, including Feuer, Clark, Peters, Feuer's Chief of Staff, Leela Kapur, and LADWP General Counsel Joseph Brajevich, breathed a sigh of relief - believing that the existence of the collusive litigation scheme would remain buried in the bowels of City Hall East. History has shown us, however, that most fraudulent schemes eventually surface – and when they do, the effort to cover-up the initial fraud is frequently far worse than the initial fraud itself. And so it was to be in this situation as well.

When PwC's counsel continued to doggedly pursue discovery that he rightly believed would demonstrate the existence of the City's collusive litigation scheme in the *Jones v. City* Action during seemingly endless discovery motion practice before Judge Berle, I decided that I had been involved in the City's wrongful scheme for far too long and that I needed to report the entirety of the wrongful conduct that I had been involved in

2

(including but not limited to the collusive litigation scheme) to federal law enforcement authorities and face whatever consequences may come for my wrongful actions.

In March 2019, I met with the FBI and federal prosecutors from the USAO's Public Corruption Unit and informed them that I had been involved in a wide-scale fraud involving several of the senior-most City officials in Los Angeles. I detailed the nature of the "collusive litigation scheme" that had been used by the City corruptly to settle the *Jones v. City* Action so as to "redirect the public narrative" and criticism away from City officials and toward PwC. I also detailed further corrupt and illegal conduct that I, and numerous others, had engaged in. At no time did I ever ask for, or was I ever promised, any immunity or any special treatment of any kind.

After listening to me for nearly two hours during our initial meeting, prosecutors and the FBI sat in disbelief. Recognizing their disbelief, I volunteered to work with the FBI as an undercover operative to gather evidence that would prove the truth of the information that I had provided to the government. After accepting my offer to do so, I embarked on what can only be described as an odyssey and conducted 184 undercover operations during my fifteen (15) months working at the direction and under the supervision of the FBI. Those undercover operations and other information I provided during at least twelve (12) proffer sessions proved remarkably fruitful and yielded actionable intelligence and evidence that was used to charge and convict three senior ranking City officials. Evidence I obtained during these operations was also used repeatedly ███████████████████████████

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████

During my more than 30 months of cooperation with federal law enforcement authorities, I also obtained and provided a great number of admissions by multiple City officials demonstrating the long-running pattern of illegal activity and fraudulent reporting to federal and state regulators concerning cyber security by the LADWP and City officials – all captured by me on undercover video and audio recordings.

3

During my work with the government, I was repeatedly advised that any public comments I made risked damaging the government's ongoing investigation, something I did not want to do in the slightest. Accordingly, for years I have stayed quiet publicly. I adhered to the instructions I received from the government as part of my effort to demonstrate my ongoing commitment to right my wrong. My purpose in working with the government was never to disavow responsibility for my own misconduct or to blame others. Rather, I decided to work with the government, then the Office of Chief Trial Counsel and finally, Class Counsel in the *Bradshaw* Class Action, because of something my grandfather taught me as a child.

My grandfather often told me that, it is always easy to say you are "sorry" for having done something wrong, but no one can ever really be certain if you are being truthful unless you demonstrate that you *are* sorry by your actions, because it is by your actions that people are able to truly judge you. Although my grandfather was a barber for 53 years who was only educated through the 8th grade before he had to leave school and go to work to help support his family, I always viewed him as man of great wisdom.

My remarkable attorneys, David Scheper and Jeffrey Steinfeld, have worked diligently to provide the Court with a fulsome record of the work that I performed during my more than 2,000 hours working with the government; the work that I have performed to date for the Office of Chief Trial Counsel of the State Bar of California during the more than 2,000 additional hours that I have worked for OCTC since August of 2022; and the work that I have performed to date to benefit the Class in the *Bradshaw* Class Action.

My actions in implementing the collusive litigation scheme, accepting the kick-back payment and partaking in the other wrongful conduct, were reprehensible and have forever damaged my reputation and character. It is my hope that I have demonstrated – and that the Court will permit me to continuing demonstrating – my commitment to atoning for my misconduct through my dedication, hard work and willingness to expose myself to risks to my safety and health. It is also my further hope and respectful request that the Court will sentence me in a manner that provides me with an opportunity to continue working with State Bar officials and *Bradshaw* Class Counsel to allow me to continue to right the wrong that I committed, and for which I am deeply sorry.

Respectfully submitted,

Paul O. Paradis

4