E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
J. JAMARI BUXTON (Cal. Bar No. 342364)
SUSAN S. HAR (Cal. Bar No. 301924)
Assistant United States Attorneys
Public Corruption and Civil Rights Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone:    (213) 894-3519/3289
     Facsimile:    (213) 894-0141
     E-mail:       Jamari.Buxton@usdoj.gov
                   Susan.Har@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 21-540-SB |
| Plaintiff, | GOVERNMENT'S RESPONSE TO DEFENDANT'S NOTICE OF AMENDMENTS TO THE FEDERAL SENTENCING GUIDELINES APPLICABLE TO DEFENDANT |
| v. | |
| PAUL O. PARADIS, | |
| Defendant. | Hearing Date:   September 26, 2023 |
| | Hearing Time:   8:00 a.m. |
| | Location:       Courtroom of the Hon. Stanley Blumenfeld Jr. |

Plaintiff United States of America, by and through its counsel of record, the

United States Attorney for the Central District of California and Assistant United States

Attorneys J. Jamari Buxton and Susan S. Har, hereby files its response to defendant Paul

O. Paradis' ("defendant") Notice of Amendments to the Federal Sentencing Guidelines

Applicable to Defendant (the "Notice").  (Dkt. No. 91.)

This response is based upon the attached memorandum, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: September 25, 2023          Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

          /s/
J. JAMARI BUXTON
SUSAN S. HAR
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**GOVERNMENT'S RESPONSE**

The government agrees with defendant that the proposed "zero-point offender" amendment to the United States Sentencing Guidelines (memorialized as U.S.S.G. § 4C1.1[1])—which becomes effective on November 1, 2023 and generally decreases (by way of an <u>adjustment</u>) a defendant's offense level by two levels if he has zero criminal history points and satisfies nine other enumerated criteria—applies to defendant here. To avoid further continuing this matter, or alternatively requiring defendant to seek relief after the amendment becomes retroactive in February 2024, the Court should award defendant a two-level <u>adjustment</u> as if the forthcoming amendment were effective at the time of the sentencing hearing on September 29, 2023, provided defendant agrees to waive any future right to seek to modify his sentence on the basis of the amendment.

What defendant gets wrong, however, is what effect the amendment should have on his sentence. Even with the zero-point offender adjustment, the government's previous calculation of defendant's advisory guideline range (<u>18-24 months</u>), as well as its sentencing recommendation (the low-end of that range), remains unchanged. As explained below, that is because the Section 4C1.1 adjustment must be applied <u>before</u> applying Chapter Five, including Section 5G1.1(a), which reduces a range that exceeds the statutory maximum[2], as well as departures under Section 5K1.1.

Under the Guidelines "Application Instructions," courts must apply the guidelines provisions essentially in the order they appear in the Guidelines Manual. <u>See</u> U.S.S.G. § 1B1.1(a) ("The court shall determine the kinds of sentence and the guideline range as set forth in the guidelines . . . by applying the provisions of this manual in the following order, except as specifically directed."). Accordingly, courts first calculate the offense level based on Chapters One and Two; then apply any adjustments from Parts A, B, and C of Chapter Three; then apply any acceptance of responsibility points under Part E of

---

[1] <u>See</u> Dkt. No. 91-1 at 9-10.

[2] Section 5G1.1(a) states: "Where the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence." U.S.S.G. § 5G1.1(a).

Chapter Three; and then calculate the criminal history score based on Chapter Four, Part A, after which they "[d]etermine from Part B of Chapter Four any other applicable adjustments." See U.S.S.G. §§ 1B1.1(a)(1)-(6).  Thereafter, courts are to determine the guideline range in Part A of Chapter Five (i.e., the sentencing table) that corresponds to the previously determined offense level and criminal history category.  See U.S.S.G. § 1B1.1(a)(7).  Courts then must "determine from Parts B through G of Chapter Five" the various sentencing requirements and options.  See U.S.S.G. § 1B1.1(a)(8).  Finally, after that has occurred, courts "shall then consider Parts H and K of Chapter Five [including Section 5K1.1, titled "Substantial Assistance to Authorities"], Specific Offender Characteristics and Departures, and any other policy statements or commentary in the guidelines that might warrant consideration in imposing sentence," see U.S.S.G. § 1B1.1(b) (emphasis added), followed by considering "the applicable factors in 18 U.S.C. § 3553(a) taken as a whole."  See U.S.S.G. § 1B1.1(c).

Nothing about the zero-point offender amendment directs that the application of Section 4C1.1 should deviate from the regular, linear order prescribed in Section 1B1.1(a).  Indeed, this conclusion is consistent with the text of Section 4C1.1, which directs that the two-level reduction be applied to "the offense level determined under Chapters Two and Three" (see Dkt. No. 91-1 at 10), and further requires that, to receive the adjustment, "the defendant [must] not receive any criminal history points from Chapter Four, Part A." (See id. at 9.)  Thus, consistent with Section 1B1.1, Section 4C1.1 must be applied sequentially with the other Chapters and Parts, and, importantly, before applying Chapter Five, which includes the cap under Section 5G1.1(a) and departures under Section 5K1.1.

Applying the guidelines and the zero-point offender adjustment sequentially here results in the same advisory guideline range of 18-24 months the government previously calculated, even with the two-level reduction:

1.    **Chapter Two:** As the parties agreed in the plea agreement, and as USPO found in the PSR, defendant has a base offense level of 14 and following the application

of various specific offense characteristics, defendant's offense level is **36** (Dkt. No. 26 ["PSR"] ¶¶ 76-90);

2.      **Chapter Three:**  No adjustments from Parts A, B, and C of Chapter Three apply (PSR ¶¶ 87-89), but defendant receives a three-level reduction for acceptance of responsibility under Part E, reducing defendant's offense level to **33** (id. ¶¶ 92-94);

3.      **Chapter Four:**  Defendant has a criminal history category of I under Part A.  (Id. ¶ 99.)  Applying the zero-point offender reduction under Part C, he receives a two-level downward adjustment at this point, resulting in an offense level of **31**.

4.      **Chapter Five:** Thereafter, Section 1B1.1(a)(7) requires that defendant's guideline range be determined under Part A of Chapter Five.  Based on an offense level of **31** and a criminal history category of I, that range is **108-135 months**.  Because the range exceeds the statutory maximum sentence (here, 120 months), Section 5G1.1(a), which is considered next, requires that the range be reduced accordingly.  See U.S.S.G. § 5G1.1(a).  The applicable guideline range thus becomes **108-120 months**, although the offense level remains 31.  Finally, the government's recommended 12-level downward departure under Section 5K1.1 and its additional recommended 4-level downward variance are considered.  (See Dkt. No. 74 at 7-8.)  If followed, the combined 16-level departure/variance would reduce defendant's total offense level from 31 to **15**, resulting in an advisory range of **18-24 months**.

As before, the government recommends a sentence at the low-end of this range: 18 months' imprisonment.  As the government argued throughout its sentencing papers, this is the necessary and sufficient sentence to achieve the goals of sentencing and to account for defendant's criminal conduct and history and characteristics, none of which have changed factually.

Accordingly, the government urges the Court to apply the two-level reduction as an adjustment, exactly as contemplated in the forthcoming amendment.  To tack on an additional two-level downward variance for the zero-point offender amendment after application of the Section 5K1.1 credit (thereby reducing his offense level to 13 and his

range to 12-18 months[3]), as defendant suggests, would give defendant an unfair windfall and place him in a <u>better</u> position than he would occupy after November 1. If the Court were inclined to so apply a two-level downward variance to account for the amendment, the government would be in favor of continuing defendant's sentencing to November so that he receives the benefit of the amendment without obtaining an unfair advantage not contemplated by the Sentencing Commission.

---

[3] Also contrary to defendant's assertion, a two-level downward variance to account for the zero-point offender adjustment would result in a total offense level of 13, not 11, and an advisory guideline range of 12-18 months (assuming the Court grants the government's recommended 16-level departure/variance). (<u>See</u> Dkt. 91 at 3-4.) If that occurred, defendant would be in <u>Zone C</u>, not Zone B, and thus the presumption of a non-custodial sentence in the amended Application Note 10(A) to U.S.S.G. § 5C1.1 still would not apply.

4